May it please the Court, Philip Smith and Nicole Holt Nelson on behalf of the petitioner Ofelia Gonzalez-Jimenez. Your Honor, this case really highlights two of Congress' chief concerns when they eliminated the old law, deportation proceedings, and suspension of deportation, and they enacted the new law, which are removal proceedings and cancellation of removal. And first, Congress wanted to create a more efficient removal determination system and remove the incentive in the old law for an individual who was placed in deportation proceedings to delay their case in order to accumulate sufficient time to be eligible for suspension of deportation. And so Congress created what's now known as the stop time rule so that a person's accrual, their eligibility for relief stops at the beginning of the proceedings rather than at the end of the proceedings, because under the old law a person could continue to accrue time throughout the deportation process. At the same time, Congress also wanted to maintain a safety valve within the law so that the law had flexibility where an individual with a particularly meritorious case who met the specific statutory criteria set out in the law would be eligible to apply to stay for permanent resident status. And those four basic criteria is the individual has been in the United States at least ten years, and that's where the continual physical presence that we're going to address today. Secondly, they're a person of good moral character. Third, they've not been convicted of a crime. And fourth, they have a U.S. citizen or a lawful permanent resident, parent, spouse, or child, who would suffer exceptional and extremely unusual hardship if their non-citizen relative was deported from the country. Could you go to the heart of the matter, and that is the statute which reads that the ten-year presence has to be, and I think Congress uses the word, immediately preceding. Yes. The application. And so why, how do you get around that immediately preceding language? Well, I think that immediately preceding has to be understood within the context of the statute, and that's what this Padilla-Romero case recently also addressed. And so our reading is immediately preceding means, well, it cannot mean, as Padilla-Romero says, literally immediately preceding the filing of the application, because Congress said the continuous physical presence terminates on the service of the notice to appear. And so an individual doesn't apply when they're served with the notice to appear. That may happen a year later, some point in the removal proceedings. So immediately preceding means at the beginning of the process they have their ten years of continuous physical presence. Don't you see a difference between a notice to appear and an expedited remove order? Well, the statute actually doesn't directly address expedited remove order, but we would say it's It would be the equivalent. Under this Court's decision in Juarez-Ramos, which says an expedited removal order interrupts continuous physical presence. And they do that based on congressional intent to sever the petitioner's allegiance to the United States. Well, we would say it's based on congressional intent to stop the accrual of time at the beginning so that they're not able to gain eligibility as the removal proceeding goes on. Your argument is that for purposes of an event interrupting the ten-year requirement, there's no functional difference between an NTA and an expedited order. Is that what you're arguing? That's correct. We would say they're functionally equivalent. They both terminate the continuous physical presence, but they do not erase the continuous physical presence the individual has already accrued. That leads to my next question. Have you been able to find a case factually similar to this one where the ten-year period, I think everyone agrees, was established, but a court, the Ninth Circuit has held or the Supreme Court has held that an act occurring after the ten years causes the interruption? And I'll tell you in advance, we haven't been able to find either. No, no. The closest in terms of directly addressing the expedited removal order was the Court's decision in Juarez-Ramos, but in that case they only had six years. And so we would say what would cut off, what wouldn't be immediately proceeding, is if you had this ten years at some remote period in time, or from the statute if the person had been gone more than 90 days, it says the person, it then says that the continuous physical presence is broken. At that point, they would have to accrue a new ten years. Is there any place in any statute where Congress has said that an event occurring after the accumulation of the required period can cause it to be interrupted? Not that I'm aware of, as I understand your question. I assume if Congress wanted to, they could have said that. They could have said, notwithstanding the fact that you accumulate the period, if you do any of the following things thereafter, schools out. Well, I think that's right. And I think this statute also has a section where Congress said who's ineligible to apply, and they did not include this type of circumstance within that. What do we make of the circumstances of her re-entry? That is, it is a negative factor that can be considered by the immigration judge, both in terms of good moral character, which he actually had quite a discussion on in this record, and even once a person is eligible to apply, it's still a discretionary determination. You would concede if this were a case where an immigration judge had said you've met every other requirement, but I don't think you've met the good moral character requirement because you twice appeared at the border and falsely claimed to be a United States citizen. You wouldn't have any trouble with a review of that. That's discretionary, right? Well, we would agree that that's discretionary review. I mean, we would argue that that doesn't show your last good moral character, but that would be for the judge to decide. But isn't it within the government's province as to whether they put you in expedited removal or regular proceedings, right? That's correct. That's within their discretion. And so in order to adopt your argument, we would have to basically say that the expedited removal proceedings don't have any effect on the timing. No, we would say we're Or the order, excuse me, the order. We would, that could stop the accrual of time. I think that's what the court found in Juarez-Ramas, that the expedited removal order stopped the Now, it uses the language, interrupts continuous physical presence. But under the Padilla-Romero, and just looking at the statute, we would say that stops the accrual of time. And that goes back to what Congress's intent was in creating this, the cancellation of removal. And we also have to keep in mind the context of Congress also wanted to have some flexibility so that a meritorious individual, in this case we have the mother of a little girl with Down syndrome, who from this record is doing everything she should be doing, frankly, to get this girl the support and help to raise her so that she has a fighting chance in life. And really, it's hard to imagine Congress having a better candidate who would want to be eligible, assuming she meets the criteria. And it certainly can be understood that she meets the criteria the court can find consistent with Juarez-Ramas, consistent with the statute, consistent with congressional intent, expedited removal order terminated, stopped the accrual of time, but it didn't erase the time that she already had. How can we do that in light of the language of 1229B? It does mention the notice to appear, but it doesn't mention anything about expedited removal orders for stopping time. Well, it doesn't mention anything about expedited removal orders at all in the cancellation statute. And so it's only by analogy that it's been brought in to say that it interrupts continuous physical presence. Because in the expedited removal process there really is no process, it's not like the individual doesn't have an opportunity to apply for the relief, it seems appropriate that it would act as a notice to appear in that it's at the beginning of the process, it stops the accrual of time, but it doesn't erase time. Why don't we hear from the government? I'm sorry, thank you. There's a little button on your left that you can press that down. Good morning. Good morning. May it please the Court, my name is Elizabeth Carlin and I represent the government in this case. Petitioner's argument that she met the 10 years physical presence requirement despite having been removed under an expedited removal order is foreclosed by this Court's holding in Juarez-Ramas. And consistent with the Court's reasoning in Juarez-Ramas, this Court should find that an expedited removal order not only interrupts but nullifies an alien's continuous physical presence. Okay, let me ask you the same questions I asked Petitioner, counsel. First of all, is there any statute anywhere in the immigration sequence of statutes that flatly says what you just argued? The answer is no. There is none, Your Honor. There's no statute where Congress has said if you establish 10 years, despite the fact that you've established 10 years, if you later are subject to an expedited order of removal, it wipes out the 10 years. No statute says that, correct? There is no statute that specifically discusses that. However, this Court has accorded Chevron deference to the Board's reasoning and analysis under matter of remolis al-Qaeda, where the Board was considering the consequences of a state action. And in that case, the state action was a voluntary departure order. Now, the flip side of what I just asked is I'll ask you the same question I asked Petitioner, counsel, which is is there any Ninth Circuit or Supreme Court case that says that a later event can cause the interruption of an already established 10-year uninterrupted presence? No, Your Honor. There is no case that Juarez-Ramas, the reasoning in Juarez-Ramas and the reasoning in Vasquez-Lopez can be applied by extension to this case, which is why the government- Both involved situations where the expedited order occurred during the accrual of the period, correct? The expedited removal- Am I correct or incorrect? You are correct, Your Honor. It was issued during- in Juarez-Ramas six years after the alien's accrual of time. However, the court in Juarez-Ramas looked at 1229 B.D. and specifically the section of B.D. 2 and accorded Chevron deference to the Board's reasoning that although there are- the Congress had provided that there were certain breaks that can occur in a continuous physical presence, that there are other breaks that are shorter than the 90- to 180-day rule that can result in the severance of an alien's continuous physical presence. None of which occurred in this case? Yes. The expedited removal order did sever the- But is that one of the ones that the agency listed as a basis for severance? I'm- Is there a prior ruling you're saying in Ramoulis? That's just a deference question, right? Yes, because the court recognized that there- that state actions such as voluntary departure or, in this case, expedited removal, embody Congress's intent that once an individual departs from the United States under such an order, the consequences of that order mean that the petitioner's ties with this country are severed. And the court recognized that to allow an individual to illegally re-enter, to find that an individual could continue to resume that presence once they returned to the United States, if they were able to illegally re-enter, would be, in essence, promoting illegal re-entry, because it would encourage aliens who had been found removed from this country under a formal order of removal to attempt to re-enter and then claim that they can use that presence that they had accrued prior to the issuance of that order and prior to the government finding that they were subject to being removed. So what are the circumstances in which you can stack your prior times in the country, in which you can leave the country and come back but still be able to accrue time? What are those circumstances? The only circumstances where that would happen would be when there has been no formal state action that has occurred, whether there had- and under 1229BD2, that is embodied in the short, brief absences. So those are the cases we have where people go to Mexico to visit family, go to funerals, and they come and go but within a short period of time, and then they're permitted to tack the whole time on to continuous physical presence, is that correct? Yes. And, Your Honor, the expedited removal orders and voluntary departure orders are state actions that- that state actions that do not fall into either 1229BD1 or 2. But as this Court has recognized in its previous case law, when analyzing the consequences of such state action, it's important to look at the statute and look at Congress's- What about the notice to appear? Because Mr. Smith's argument is that these are functionally equivalent. Would you address that? They are not, Your Honor, because expedited removal orders, like voluntary departure orders are- do not fall into 1229BD1, which is the provision, the stop time provision, which this Court discussed in Fedillo-Romero as- as interrupting physical presence. And they also don't fall- they also don't fall under BD2, which is the provision providing for short absences, providing that certain absences may- may break continuous physical presence. Would it be fair to say this after reviewing the landscape of these statutes, that what this petitioner did is neither- does not- it certainly doesn't fall within one of the exceptions on interruption, correct? Yes, Your Honor. But it also is not a flat bar according to the statute itself. There's nothing in the statute that says you get an expedited order, doesn't matter if you have 30 years, school's out. Doesn't say that. There- it does not, Your Honor. However, in considering this- the consequences of that expedited removal order, the Court has to find that consistent with its reasoning and its case law, that Congress intended for these types of state action to sever an alien's ties with the country. I think we've heard your argument on that. Actually, I have a point that relates to the two points that I just made, and I'd like you to really listen, if you will, okay? There are basically two things that could happen as the result of this case. One is the government could get a ruling which flatly says that something like this, an expedited order of removal, extinguishes any prior established 10-year period. That's one possible result. The other possible result is that the panel could say that it doesn't, that you can't physically interrupt something that's already extant. And with those two possibilities in mind, you might want to think about whether to mediate this case, whether you really want this case to be the one where the Court writes on it, given this woman's circumstance, a Down's Syndrome child. There's no doubt about that, is there? No, Your Honor. She has no criminal record. The government could have prosecuted her for the statements made at entry. It's chosen not to. Is that correct? Yes, Your Honor. It is unknown what DHS, why DHS exercised its prosecutorial discretion to place her in removal proceedings rather than expedited removal. However, Your Honor, our position is that it would be... We understand your legal position. You've stated it very well. I can't imagine that it could be stated more articulately, and you should be congratulated for that. I'm just asking you, when you think about what went on here today and you talk to your superiors back at the Department of Justice, to ask them whether this case might be mediated instead of pushed to a result, which the government might not want. I understand, Your Honor. May I finish my argument? Sure. That's up to the presiding judge. I would say that if Petitioner has no legitimate expectation that she could illegally re-enter the U.S. and benefit from her prior accrual of continuous physical presence after she was removed, this Court cannot provide Petitioner with the relief that she seeks without rendering a decision that promotes illegal re-entering and ignores the consequences of an expedited removal order. And in this case, Petitioner, because she was found, she had twice made a false claim to U.S. citizenship, cannot benefit from any relief because she is barred from adjustment of status and cannot qualify for cancellation of removal. I actually have one other question. I just have one other question. I think I know the answer, but has an immigration judge ever considered under the good moral character requirement, that is one of the requirements, the impact of the statement she made at entry on two occasions? Has that ever happened? Yes, that has. And what was the result? And that was not at issue.  What do you mean it was not at issue? The immigration judge found that she had met the good moral character requirement. Despite the two statements about being a citizen? Yes, Your Honor. However, because the fact of the matter is that she did make and twice make a false claim to U.S. citizenship, that is a permanent ground and was issued an expedited removal order and re-entered subsequent to that. That's a permanent ground for inadmissibility, and there is no waiver of that ground for purposes of adjustment of status. Okay. Thank you. You may have a minute. I know we've gone over a bit here and there. Thank you. I'll try to be brief. Back to the main point that we're talking about. Congress could have, they had a set of who was ineligible. They listed in the cancellation statute. So they certainly could have, if they wanted to make someone who had been, received an expedited removal order ineligible, they could have listed that in the statute, but they did not. It does not, if you accept that the expedited removal order terminates, stops the accrual of time, it does not necessarily encourage illegal re-entry. An argument that is if it wiped out the time, then if a person illegally returned, they could begin to accrue a new ten-year period so that in ten years they could apply for cancellation. But if the time is terminated and it's stopped, they would not be able to accrue another ten-year period. And so for those individuals like Juarez-Ramos who had less than ten years at the time they received the expedited removal order, they are never going to be able to accrue sufficient time to be eligible for cancellation. Thank you. And I thank both counsel for your arguments. This is a, like many of these immigration cases, a complicated statutory scheme. Following up on Judge Hawkins' question to the government, we will hold any decision, assuming we would even have it in 15 days, but we'll hold it for 15 days, give you an opportunity both sides to consult with each other. You can communicate to the clerk if both parties are interested in proceeding with mediation. We do not want to know who or which, yes, no, or otherwise. And the decision to proceed with mediation, yes or no, will not in any way, if you decide not to go to mediation, would not in any way affect the final decision of the court. Thank you.
judges: Whelan, Hawkins, McKeown